JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
DANIEL J. O'BRIEN (Cal. Bar No. 141720)
Assistant United States Attorney
Senior Litigation Counsel
Public Corruption & Civil Rights Section
J. JAMARI BUXTON (Cal. Bar No. 342364)
Assistant United States Attorney
Public Corruption & Civil Rights Section
MAXWELL K. COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Cyber & IP Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2468/3519/1785
    Facsimile: (213) 894-0141
    E-mail:    daniel.obrien@usdoj.gov
               maxwell.coll@usdoj.gov
               jamari.buxton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

3/4/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ MMC _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

　　　　Plaintiff,

　　　　　　v.

IRIS RABAYA AU,
　aka "The Goddess,"

　　　　Defendant.

No.   2:25-CR-00140-GW

PLEA AGREEMENT FOR DEFENDANT
IRIS RABAYA AU

　　　1.    This constitutes the plea agreement between Iris Au
("defendant") and the United States Attorney's Office for the Central
District of California (the "USAO") regarding an investigation of tax
offenses.  This agreement is limited to the USAO and cannot bind any
other federal, state, local, or foreign prosecuting, enforcement,
administrative, or regulatory authorities.

1A

1                          DEFENDANT'S OBLIGATIONS

2        2.   Defendant agrees to:

3             a.   Give up the right to indictment by a grand jury and,
4    at the earliest opportunity requested by the USAO and provided by the
5    Court, appear and plead guilty to an Information in the form attached
6    to this agreement as Exhibit A or a substantially similar form, which
7    charges defendant with a violation of 26 U.S.C. § 7206(1): False
8    Subscription to a Tax Return.

9             b.   Not contest the Factual Basis agreed to in this
10   agreement.

11            c.   Abide by all agreements regarding sentencing contained
12   in this agreement.

13            d.   Appear for all court appearances, surrender as ordered
14   for service of sentence, obey all conditions of any bond, and obey
15   any other ongoing court order in this matter.

16            e.   Be truthful at all times with Pretrial Services, the
17   United States Probation Office, and the Court.

18            f.   Not commit any crime; however, offenses that would be
19   excluded for sentencing purposes under United States Sentencing
20   Guideline ("U.S.S.G." or "Sentencing Guideline") § 4A1.2(c) are not
21   within the scope of this agreement.

22            g.   Pay all tax deficiencies, fraud penalties, and
23   statutory interest obligations as provided in paragraph 3 of this
24   agreement.

25            h.   Pay the applicable special assessments at or before
26   the time of sentencing.

27   //

28   //

1A

PAYMENT OF TAXES OWED

3.    Defendant admits that she received unreported income of $42,795.34, $1,299,503, $526,050, and $779,000 for the years 2020, 2021, 2022, and 2023, respectively.  Defendant agrees that:

a.    Defendant is liable for the tax deficiencies resulting from the failure to report this income and the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6651(f), for her willfully fraudulent failure to file tax returns for the years 2020 and 2023, and 26 U.S.C. § 6663(a), on the understatements of tax liability for the years 2021 and 2022.

b.    Defendant will execute closing agreement (the "Closing Agreements") with the Internal Revenue Service ("IRS") within 60 days from the execution of this plea agreement, permitting the IRS to assess and collect tax liabilities for the tax years 2020 through 2023, as well as fraud penalties and statutory interest on those tax liabilities, in a manner that is consistent with this plea agreement and as provided by law.

c.    Defendant will make good faith efforts to pay the tax deficiencies, fraud penalties imposed by the Internal Revenue Code, and statutory interest obligations as acknowledged in the Closing Agreements, prior to sentencing or prior to June 30, 2025, whichever comes first.

d.    Defendant gives up any and all objections that could be asserted to the Examination Division of the IRS receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

1        e.   Defendant will not file any claim for refund of taxes,

2  penalties, or interest for amounts attributable to the returns filed

3  in connection with this plea agreement.

4               <u>FORFEITURE AND FINANCIAL ACCOUNTABILITY</u>

5     4.   Defendant further agrees:

6        a.   To forfeit, with the exception of the unreported

7  income identified in paragraph 3 above, all right, title, and

8  interest in any and all monies, cryptocurrencies, properties, and

9  other assets derived from, or acquired as a result of, the fraudulent

10  sale of access to Facebook advertising accounts or lines of credit,

11  the fraudulent sale of financial interests in Zort, Inc. or "Zort

12  Fund," the fraudulent sale of "Zort Coin," and any business activity

13  engaged in by Zort, Inc., Dream Agency, Rise Agency, Inc., or Atlas

14  Marketing Agency, Inc., specifically including the following:

15        i.   One 2022 Mercedes Benz GLS600Z4 VIN

16  4JGFF8HB1NA788488;

17        ii.  One 2018 Mercedes Benz GTCA VIN

18  WDDYK8AA5JA022404;

19        iii. One 2019 Porsche 911 VIN WP0AF2A91KS165252;

20        iv.  One 2019 Ferrari 488 Pista VIN ZFF90HLA9K0240288;

21        v.   One 2022 Mercedes-Benz Metris VIN

22  W1YV0CEY3N3966155;

23        vi.  All funds in HSBC Premier account number ending

24  in 5108;

25        vii. All funds in HSBC Premier account number ending

26  in 5116;

27        viii.  All items seized from the premises located

28  at 7 Via Brezza, Newport Coast, California, including:

1              (I)    fourteen Louis Vuitton bags;

2              (II) one Prada bag;

3              (III)    one Bottega Veneta bag;

4              (IV) three Chanel bags;

5              (V)    two Celine bags;

6              (VI) one Burberry bag;

7              (VII)    eight Hermes bags;

8              (VIII)    five Gucci bags;

9              (IX) two Dior bags;

10             (X)    one Balenciaga bag;

11             (XI) one black bag inscribed "Lord Tiana,"

12             (XII)    one pair of Tiffany earrings;

13             (XIII)    one Glock 19, 9mm pistol, serial number

14  BRNW965;

15             (XIV)    one Smith & Wesson, M&P 15 rifle,

16  serial number TP91684;

17             ix.   All items seized from the premises located at 43

18  Beach View Avenue, Dana Point, CA 92629, including:

19             (I)    One black and yellow Jacob & Co. "Godfather"

20  watch; and

21             (II) Three "Godfather" sculptures;

22  (collectively, the "Forfeitable Assets").

23        b.    To the Court's entry of an order of forfeiture at or

24  before sentencing with respect to the Forfeitable Assets and to the

25  forfeiture of the assets.

26        c.    To take whatever steps are necessary to pass to the

27  United States clear title to the Forfeitable Assets, including,

28  without limitation, the execution of a consent decree of forfeiture

5

1    and the completing of any other legal documents required for the

2    transfer of title to the United States.

3          d.    Not to contest any administrative forfeiture

4    proceedings or civil judicial proceedings commenced against the

5    Forfeitable Assets, including administrative forfeiture notice

6    #587856 dated November 22, 2024.  If defendant submitted a claim

7    and/or petition for remission for all or part of the Forfeitable

8    Assets on behalf of himself or any other individual or entity,

9    defendant shall and hereby does withdraw any such claims or

10   petitions, and further agrees to waive any right she may have to seek

11   remission or mitigation of the forfeiture of the Forfeitable Assets.

12          e.    Not to assist any other individual in any effort

13   falsely to contest the forfeiture of the Forfeitable Assets.

14          f.    Not to claim that reasonable cause to seize the

15   Forfeitable Assets was lacking.

16          g.    To prevent the transfer, sale, destruction, or loss of

17   any and all assets described above to the extent defendant has the

18   ability to do so.

19          h.    That forfeiture of Forfeitable Assets shall not be

20   counted toward satisfaction of any special assessment, fine,

21   restitution, costs, or other penalty the Court may impose.

22          i.    To the abandonment to the United States of any

23   interest of the defendant in the any firearm or ammunition and to

24   complete any legal documents (including, but not limited to, an ATF

25   Form 3400.1 – Abandonment) required for the transfer of title of such

26   firearms to the United States.

27   5.    Defendant understands that all items seized by the

28   government during the course of its investigation, including all

1A

1  digital devices belonging to defendant, even if not identified as

2  forfeitable under the terms of this agreement, will be maintained as

3  evidence and, should further evidence indicate that such items

4  constitute proceeds or instrumentalities of criminal activity, may be

5  subject to future forfeiture actions.

6      6.    With respect to any criminal forfeiture ordered as a result

7  of this plea agreement, defendant waives: (1) the requirements of

8  Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice

9  of the forfeiture in the charging instrument, announcements of the

10  forfeiture sentencing, and incorporation of the forfeiture in the

11  judgment; (2) all constitutional and statutory challenges to the

12  forfeiture (including by direct appeal, habeas corpus or any other

13  means); and (3) all constitutional, legal, and equitable defenses to

14  the forfeiture of the Forfeitable Assets in any proceeding on any

15  grounds including, without limitation, that the forfeiture

16  constitutes an excessive fine or punishment.  Defendant acknowledges

17  that forfeiture of the Forfeitable Assets is part of the sentence

18  that may be imposed in this case and waives any failure by the Court

19  to advise defendant of this, pursuant to Federal Rule of Criminal

20  Procedure 11(b)(1)(J), at the time the Court accepts defendant's

21  guilty plea.

22                      THE USAO'S OBLIGATIONS

23      7.    The USAO agrees to:

24          a.    Not contest the Factual Basis agreed to in this

25  agreement.

26          b.    Abide by all agreements regarding sentencing contained

27  in this agreement.

28

1          c.    Recommend that defendant be sentenced to a term of
2    imprisonment no higher than the low end of the applicable Sentencing
3    Guidelines range.  For purposes of this agreement, the low end of the
4    Sentencing Guidelines range is that defined by the Sentencing Table
5    in U.S.S.G. Chapter 5, Part A.

6          d.    At the time of sentencing, provided that defendant
7    demonstrates an acceptance of responsibility for the offense up to
8    and including the time of sentencing, recommend a two-level reduction
9    in the applicable Sentencing Guidelines offense level, pursuant to
10   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
11   additional one-level reduction if available under that section.

12         e.    Not further criminally prosecute defendant for federal
13   crimes, including 18 U.S.C. § 371 (Klein conspiracy), 1957 (money
14   laundering), and 18 U.S.C. § 1001 (false statements) arising out of
15   defendant's conduct alleged in the Information and the Factual Basis
16   to this plea agreement.  Defendant understands that the USAO is free
17   to criminally prosecute defendant for any other unlawful past conduct
18   not presently known to the USAO or any unlawful conduct that occurs
19   after the date of this agreement.

20                        NATURE OF THE OFFENSE

21       8.    Defendant understands that for defendant to be guilty of
22   the crime charged in the Information, that is, 26 U.S.C. § 7206(1):
23   False Subscription to a Tax Return, the following must be true:
24   (1) defendant made and signed a tax return for the year 2021 that she
25   knew contained false information as to a material matter; (2) the
26   return contained a written declaration that it was being signed
27   subject to the penalties of perjury; and (3) in filing the false tax
28   return, the defendant acted willfully.  A matter is material if it

                                   8

had a natural tendency to influence, or was capable of influencing, the decisions or activities of the Internal Revenue Service.  A defendant acts willfully when defendant knows that federal tax law imposed a duty on defendant and defendant intentionally and voluntarily violated that duty.

PENALTIES AND RESTITUTION

9.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 26 U.S.C. § 7206(1) is: three years imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.    Defendant understands and agrees that defendant will be required to pay full restitution for the offense of conviction.  The parties stipulate that the appropriate amount of restitution should be the tax deficiencies plus penalties and interest set forth in the Closing Agreements referenced in paragraph 3.

12.    Defendant understands that the government is not precluded from pursuing, in excess of any payment schedule set by the Court,

1   any and all available remedies by which to satisfy defendant's

2   payment of her full financial obligation, including referral to the

3   Treasury Offset Program.

4       13.   Defendant understands that, by pleading guilty, defendant

5   may be giving up valuable government benefits and valuable civic

6   rights, such as the right to vote, the right to possess a firearm,

7   the right to hold office, and the right to serve on a jury.

8   Defendant understands that she is pleading guilty to a felony and

9   that it is a federal crime for a convicted felon to possess a firearm

10  or ammunition.   Defendant understands that the conviction in this

11  case may also subject defendant to various other collateral

12  consequences, including but not limited to revocation of probation,

13  parole, or supervised release in another case and suspension or

14  revocation of a professional license.   Defendant understands that

15  unanticipated collateral consequences will not serve as grounds to

16  withdraw defendant's guilty plea.

17      14.   Defendant and her counsel have discussed the fact that, and

18  defendant understands that, if defendant is not a United States

19  citizen, the conviction in this case makes it practically inevitable

20  and a virtual certainty that defendant will be removed or deported

21  from the United States.   Defendant may also be denied United States

22  citizenship and admission to the United States in the future.

23  Defendant understands that while there may be arguments that

24  defendant can raise in immigration proceedings to avoid or delay

25  removal, removal is presumptively mandatory and a virtual certainty

26  in this case.   Defendant further understands that removal and

27  immigration consequences are the subject of a separate proceeding and

28  that no one, including defendant's attorney or the Court, can predict

to an absolute certainty the effect of her conviction on her
immigration status.  Defendant nevertheless affirms that defendant
wants to plead guilty regardless of any immigration consequences that
the plea may entail, even if the consequence is automatic removal
from the United States.

FACTUAL BASIS

15.  Defendant admits that defendant is, in fact, guilty of the
offenses to which defendant is agreeing to plead guilty.  Defendant
and the USAO agree to the Factual Basis provided below and agree that
this Factual Basis is sufficient to support a plea of guilty to the
charge described in this agreement and to establish the Sentencing
Guidelines factors set forth in paragraph 17 below but is not meant
to be a complete recitation of all facts relevant to the underlying
criminal conduct or all facts known to either party that relate to
that conduct.

Background

During the period 2019 through 2023, defendant was engaged in a
romantic relationship with, and typically cohabitated with, Adam Iza,
aka Ahmed Faiq ("Iza"), in Los Angeles and Orange Counties,
California.

Using the sobriquet "The Godfather" and other fictitious names
to disguise his identity, during the period 2020 through 2024, Iza
engaged in a variety of fraudulent schemes through which he derived
substantial gross income.  In one such scheme, Iza illicitly and
fraudulently gained access to advertising accounts and lines of
credit provided by Facebook, Inc. and Meta Platforms, Inc.
(collectively, "Meta") and sold that access to various advertising
companies thereby making millions of dollars in profits.

Iza engaged the services of off-duty Los Angeles County
Sheriff's Department deputies to provide him with personal security.
Iza enlisted these law enforcement officers to obtain confidential
law enforcement information and court-authorized search warrants to
obtain personally identifiable information about individuals with
whom Iza had financial and personal disputes.  Iza also enlisted the

11

law enforcement officers to intimidate and threaten these adversaries.

Formation & Operation of Nominee Entities

At Iza's direction, defendant created and became the sole director and sole officer of various nominee entities. At Iza's direction, defendant also opened bank accounts and engaged in financial transactions for nominee entities.

On July 21, 2017, defendant incorporated Zort, Inc. ("Zort"). Zort was dissolved by defendant on August 21, 2018 and was reincorporated by Iza on January 30, 2020. On January 31, 2020, Iza and defendant jointly opened a Bank of America account for Zort.

At Iza's direction, on February 8, 2021, defendant incorporated Dream Agency ("Dream"), which she represented to be a social media company. Defendant was the sole director and officer of Dream. Defendant registered Dream with the IRS as an S Corporation using defendant's social security number. On April 27 and October 6, 2021, respectively, defendant opened Bank of America and Chase Bank accounts for Dream. Defendant was the sole signatory on the Dream bank accounts.

At Iza's direction, on April 8, 2022, defendant incorporated Rise Agency ("Rise"), which she represented to be an e-commerce company primarily engaged in drop-shipping. Initially, defendant was the sole director and officer of Dream. Defendant registered Rise with the IRS as an S Corporation using defendant's social security number. On April 8, 2022, defendant opened a Chase Bank account for Rise. Initially, defendant was the sole signatory on the Dream bank account.

At Iza's direction, on April 8, 2022, defendant caused her personal assistant to incorporate Atlas Marketing Agency, Inc. ("Atlas"). On April 22, 2022, defendant and her assistant jointly opened a Chase Bank account for Atlas.

At Iza's direction, defendant engaged in financial transactions to pay the law enforcement officers who Iza had hired and to distribute proceeds of Iza's fraudulent schemes to benefit Iza and defendant.

From January 2021 through December 2023, at Iza's direction, defendant withdrew approximately $1,725,000 in cash from the ZORT, DREAM, RISE, and ATLAS bank accounts. During the period August 2021 through March 2022, approximately $948,000 of that cash was withdrawn from the ZORT and DREAM bank accounts, which defendant distributed to law enforcement officers hired by Iza. During this same period,

1A

defendant also issued approximately $238,000 in direct payments from DREAM to a law enforcement officer and a company operated by a law enforcement officer hired by Iza.

From January 2021 through December 2023, at Iza's direction, defendant transferred and/or permitted Iza to transfer, over $16 million from the ZORT, DREAM, RISE, and ATLAS bank accounts to purchase cryptocurrencies that Iza used, in part, to conduct his fraudulent schemes.

From October 2021 through July 2022, at Iza's direction, defendant transferred and/or permitted Iza to transfer, over $4 million from DREAM's bank account to ZORT's bank account, thereby giving Iza access to those funds.

From January 2021 through December 2023, at Iza's direction, defendant transferred and/or permitted Iza to transfer, over $9.5 million from the ZORT, DREAM, RISE, and ATLAS bank accounts to purchase or lease luxury residences, automobiles, jewelry, apparel, accessories, and recreational activity to benefit Iza and defendant.

Income Received

From January 1, 2020 through December 31, 2023, defendant transferred the following amounts from the ZORT, DREAM, RISE, and ATLAS bank accounts to her personal bank accounts. Defendant acknowledges that these transfers represent taxable individual income to her.

| | |
|---|---|
| 2020 | $    42,736 |
| 2021 | $1,299,503 |
| 2022 | $  526,050 |
| 2023 | $  779,000 |
| Total | $2,663,419 |

The Failure to Report Corporate and Individual Income

Defendant was aware that Iza did not file corporate tax returns on behalf of ZORT. Defendant was aware that her assistant did not file tax returns on behalf of Atlas. Despite holding executive positions and/or partial control over ZORT and ATLAS, defendant failed to file corporate tax returns for ZORT and ATLAS for any calendar year.

Despite knowing that she had a legal duty to file federal corporate tax returns for the entities she had formed, registered with the IRS, and held exclusive executive authority, namely, DREAM and RISE, defendant failed to file corporate tax returns for DREAM and RISE for any calendar year.

Despite having received gross income and knowing that she had a legal duty to file federal individual returns for the years 2020 and 2023, defendant failed to file individual returns for those years.

Despite receiving $1,299,503 in gross income for 2021 and $526,050 in gross income for 2022, defendant willfully filed false federal tax returns for those years, falsely reporting that she had received adjusted gross income of $17,654 and $2,124, respectively.

In the preparation of her 2021 and 2022 individual income tax returns, defendant lied to her personal tax preparer ("Tax Preparer #1") by failing to disclose the existence of ZORT, DREAM, and RISE and the income she had received from those corporations.

In late 2023, after becoming aware of the government's criminal tax investigation, defendant retained the services of another tax preparer ("Tax Preparer #2"). Defendant falsely told Tax Preparer #2 that certain transactions in the ZORT, DREAM, and RISE bank accounts represented business expenses. Tax Preparer #2 referred defendant to a bookkeeper ("the Bookkeeper") who prepared a RISE Profit and Loss Statement for 2022. Defendant was informed by Tax Preparer #2 and the Bookkeeper that RISE had received $4,616,297.47 in net income in 2022 and that $3,231,316.87 of the transactions identified by defendant did not represent business expenses but rather shareholder distributions to Iza and/or defendant. Defendant then declined to execute an engagement letter with Tax Preparer #2 and, consequently, no tax returns were filed.

In February 2024, defendant resumed contact with Tax Preparer #1 and told him that she needed to file corporate returns on behalf of DREAM and RISE, as well as amended individual tax returns for 2022. Defendant provided Tax Preparer #1 with the 2022 Profit and Loss Statement for RISE prepared by the Bookkeeper. Defendant falsely told Tax Preparer #1 that $1,085,000 in Blockchain cryptocurrency transactions should not be categorized as shareholder distributions but rather as business expenses because the transactions represented marketing expenses and that the 2022 net income for RISE should be reduced to $3,616,297.47. After Tax Preparer #1 told defendant that defendant consequently would personally owe $1,265,793 in federal taxes, defendant told the Tax Preparer #1 not to file the returns.

<u>SENTENCING FACTORS</u>

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures

14

under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds
appropriate up to the maximum set by statute for the crime of
conviction.

17.  Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors apply:

| | | |
|---|---|---|
| Base Offense Level<br>($550,000 < Tax Loss < $1,500,000) | 20 | [U.S.S.G. § 2T4.1] |
| Criminal Activity | +2 | [U.S.S.G. § 2T1.1(b)(1)] |
| Total Offense Level: | 22 | |

18.  Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.  However,
if defendant has zero criminal history points and satisfies other
enumerated criteria in Sentencing Guideline § 4C1.1, the government
will recommend a two-level reduction in the Total Offense Level
referenced in paragraph 17.

19.  Subject to paragraph 31 below, defendant and the USAO agree
not to seek, argue, or suggest in any way, either orally or in
writing, that any other specific offense characteristics,
adjustments, or departures relating to the offense level be imposed.
Defendant agrees, however, that if, after signing this agreement but
prior to sentencing, defendant were to commit an act, or the USAO
were to discover a previously undiscovered act committed by defendant

15

IA

prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

20.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21.  Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.   The right to persist in a plea of not guilty.

     b.   The right to a speedy and public trial by jury.

     c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

     d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

     e.   The right to confront and cross-examine witnesses against defendant.

     f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

16

1A

1    g.   The right not to be compelled to testify, and, if
2  defendant chose not to testify or present evidence, to have that
3  choice not be used against defendant.

4    h.   Any and all rights to pursue any affirmative defenses,
5  Fourth Amendment or Fifth Amendment claims, and other pretrial
6  motions that have been filed or could be filed.

7                 WAIVER OF APPEAL AND COLLATERAL ATTACK

8    22.   Defendant gives up the right to appeal all of the
9  following: (a) with the exception of an appeal based on a claim that
10 defendant's guilty plea was involuntary, defendant's conviction on
11 the offense to which defendant is pleading guilty; (b) the procedures
12 and calculations used to determine and impose any portion of the
13 sentence; (c) the term of imprisonment imposed by the Court,
14 including, to the extent permitted by law, the constitutionality or
15 legality of defendant's sentence, provided it is within the statutory
16 maximum; (d) the fine imposed by the Court, provided it is within the
17 statutory maximum; (e) the amount and terms of any restitution order,
18 provided it requires payment of no more than the amounts specified
19 within the Closing Agreements executed by the parties; (f) the term
20 of probation or supervised release imposed by the Court, provided it
21 is within the statutory maximum; and (g) any of the conditions of
22 probation or supervised release imposed by the Court as set forth in
23 Second Amended General Order 20-04 of this Court, the drug testing
24 conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d), and the
25 alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

26   23.   Defendant also gives up any right to bring a post-
27 conviction collateral attack on the conviction or sentence, including
28 any order of restitution provided it requires payment of no more than

                                  17

the amounts specified within the Closing Agreements, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

24.  Defendant understands that these waivers include, but are not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the Factual Basis provided herein is insufficient to support defendant's plea of guilty.

25.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum and (b) the amount of restitution ordered is equal to or greater than the amounts set forth in the Closing Agreements, the USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA OR REVERSAL OF CONVICTION

26.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea or if, for any reason, defendant's conviction is vacated, reversed, or set aside, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the

1  extent that such defenses existed as of the date of defendant's
2  signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

4      27.  Defendant agrees that if the count of conviction is
5  vacated, reversed, or set aside, both the USAO and defendant will be
6  released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

8      28.  This agreement is effective upon signature and execution of
9  all required certifications by defendant, defendant's counsel, and an
10 Assistant United States Attorney.

### BREACH OF AGREEMENT

12     29.  Defendant agrees that if defendant, at any time after the
13 signature of this agreement and execution of all required
14 certifications by defendant, defendant's counsel, and an Assistant
15 United States Attorney, knowingly violates or fails to perform any of
16 defendant's obligations under this agreement ("a breach"), the USAO
17 may declare this agreement breached.  All of defendant's obligations
18 are material, a single breach of this agreement is sufficient for the
19 USAO to declare a breach, and defendant shall not be deemed to have
20 cured a breach without the express agreement of the USAO in writing.
21 If the USAO declares this agreement breached, and the Court finds
22 such a breach to have occurred, then: (a) if defendant has previously
23 entered a guilty plea pursuant to this agreement, defendant will not
24 be able to withdraw the guilty plea, and (b) the USAO will be
25 relieved of all its obligations under this agreement.

26     30.  Following the Court's finding of a knowing breach of this
27 agreement by defendant, should the USAO choose to pursue any charge

19

that was either dismissed or not filed as a result of this agreement, then:

    a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

    c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed-to Factual Basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

31. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

20

32.   Defendant understands that both defendant and the USAO are free to: (a) supplement the Factual Basis by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  This paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the Factual Basis or Sentencing Factors agreed to in this agreement.

33.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

34.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO

21

1A

1  and defendant or defendant's attorney, and that no additional

2  promise, understanding, or agreement may be entered into unless in a

3  writing signed by all parties or on the record in court.

4  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

5      35.  The parties agree that this agreement will be considered

6  part of the record of defendant's guilty plea hearing as if the

7  entire agreement had been read into the record of the proceeding.

8  AGREED AND ACCEPTED

9  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
10 CALIFORNIA

11 JOSEPH T. MCNALLY
   Acting United States Attorney

12

13 _____          02/25/2025
   DANIEL J. O'BRIEN                         Date
14 J. JAMARI BUXTON
   MAXWELL K. COLL
15 Assistant United States Attorney

16

17 _____          02/25/25
18 IRIS RABAYA AU                            Date
   Defendant

19

20 _____          2/25/25
21
   CHRISTOPHER DARDEN                        Date
22 Attorney for Iris Rabaya Au

23

24

25

26

27

28

                          22

                                                        1A

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          02/25/25
IRIS AU                                   Date
Defendant

23

1          CERTIFICATION OF DEFENDANT'S ATTORNEY

2          I am IRIS AU's attorney.  I have carefully and thoroughly

3    discussed every part of this agreement with my client.  Further, I

4    have fully advised my client of her rights, of possible pretrial

5    motions that might be filed, of possible defenses that might be

6    asserted either prior to or at trial, of the sentencing factors set

7    forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8    provisions, and of the consequences of entering into this agreement.

9    To my knowledge: no promises, inducements, or representations of any

10   kind have been made to my client other than those contained in this

11   agreement; no one has threatened or forced my client in any way to

12   enter into this agreement; my client's decision to enter into this

13   agreement is an informed and voluntary one; and the Factual Basis set

14   forth in this agreement is sufficient to support my client's entry of

15   a guilty plea pursuant to this agreement.

16

17   CHRISTOPHER DARDEN                      Date  2/25/25
     Attorney for Defendant IRIS AU

18

19

20

21

22

23

24

25

26

27

28

                              24

                                                            1A

1

<u>EXHIBIT A</u>

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                    FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

UNITED STATES OF AMERICA,            No.

11
              Plaintiff,             I N F O R M A T I O N

12
              v.                     [26 U.S.C. § 7206(1): Making and

13                                   Subscribing to a False Tax Return;
IRIS RABAYA AU,                      26 U.S.C. § 7301 and 28 U.S.C.

14    aka "The Goddess,"             § 2461(c): Criminal Forfeiture]

15            Defendant.

16

17

18      The Acting United States Attorney charges:

19                         [26 U.S.C. § 7206(1)]

20      On or about April 18, 2022, in Los Angeles County and Orange

21   County, and elsewhere, within the Central District of California,

22   defendant IRIS RABAYA AU willfully made and subscribed to a

23   materially false U.S. Individual Income Tax Return, Form 1040, for

24   the calendar year 2021, which was verified by a written declaration

25   from defendant AU that it was made under the penalties of perjury,

26   and which defendant AU filed and caused to be filed with the Internal

27   Revenue Service, knowing the tax return was not true and correct as

28   to every material matter contained therein, in that defendant AU knew

1  that she failed to report on the tax return approximately $1,299,503

2  in income.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1A

1                    FORFEITURE ALLEGATION ONE

2              [26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

3        1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4    Procedure, notice is hereby given that the United States of America

5    will seek forfeiture as part of any sentence, pursuant to Title 26,

6    United States Code, 7301, and Title 28, United States Code, Section

7    2461(c), in the event of the defendant's conviction of the offense

8    set forth in Count Two of this Information.

9        2.    The defendant, if so convicted, shall forfeit to the United

10   States of America the following: a. Any property sold or removed by

11   the defendant in fraud of the internal revenue laws, or with design

12   to avoid payment of such tax, or which was removed, deposited, or

13   concealed, with intent to defraud the United States of such tax or

14   any part thereof;

15       3.    All property manufactured into property of a kind subject

16   to tax for the purpose of selling such taxable property in fraud of

17   the internal revenue laws, or with design to evade the payment of

18   such tax;

19       4.    All property whatsoever, in the place or building, or any

20   yard or enclosure, where the property described in subsection (a) or

21   (b) is found, or which is intended to be used in the making of

22   property described in subsection (a), with intent to defraud the

23   United States of tax or any part thereof, on the property described

24   in subsection (a);

25       5.    All property used as a container for, or which shall have

26   contained, property described in subsection (a) or (b);

27       6.    Any property (including aircraft, vehicles, vessels, or

28   draft animals) used to transport or for the deposit or concealment

1A

1   of property described in subsection (a) or (b), or any property used

2   to transport or for the deposit or concealment of property which is

3   intended to be used in the making or packaging of property described

4   in subsection (a); and f. To the extent that such property is not

5   available for forfeiture, a sum of money equal to the total value of

6   the property described in this paragraph.

7        7.   Pursuant to Title 21, United States Code, Section 853(p),

8   as incorporated by Title 28, United States Code, Section 2461(c), the

9   defendant, if so convicted, shall forfeit substitute property, up to

10  the total value of the property described in the preceding paragraph

11  if, as the result of any act or omission of the defendant, the

12  property described in the preceding paragraph, or any portion thereof

13  (a) cannot be located upon the exercise of due diligence; (b) has

14  been transferred, sold to or deposited with a third party; (c) has

15  been placed beyond the jurisdiction of the court; (d) has been

16  //

17  //

18

19

20

21

22

23

24

25

26

27

28

18

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

3

4

5

6                                    JOSEPH T. MCNALLY
                                     Acting United States Attorney
7

8

9                                    LINDSEY GREER DOTSON
                                     Assistant United States Attorney
10                                   Chief, Criminal Division

11                                   CASSIE D. PALMER
                                     Assistant United States Attorney
12                                   Chief, Public Corruption and
                                        Civil Rights Section
13

14                                   THOMAS F. RYBARCZYK
                                     Assistant United States Attorney
15                                   Deputy Chief, Public Corruption
                                        and Civil Rights Section
16

17                                   DANIEL J. O'BRIEN
                                     Assistant United States Attorney
18                                   Senior Litigation Counsel
                                     Public Corruption and
19                                      Civil Rights Section

20                                   J. JAMARI BUXTON
                                     Assistant United States Attorney
21                                   Public Corruption and
                                     Civil Rights Section
22

23                                   MAXWELL COLL
                                     Assistant United States Attorney
24                                   Cyber and Intellectual Property
                                     Crimes Section
25

26

27

28